# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PEYTON HOPSON, | ) | CASE NO. 5:21-cv-704 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| WARDEN DAVID W. GRAY, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") filed by *pro se* petitioner Peyton Hopson ("Hopson" or "petitioner"), and an addendum to the petition. (Doc. Nos. 2, 11.) Hopson originally filed the petition, along with motions for "expedited consideration" (Doc. No. 3) and "release of medical records" (Doc. No. 4), in the District Court for the Southern District of Ohio. Thereafter, the action was transferred to the Northern District of Ohio. (Doc. Nos. 1, 7.) After the case was transferred, Hopson filed a motion for this Court to recuse and transfer this action back to the Southern District, and an amendment to the motion for recusal. (Doc. Nos. 9, 10.)

For the reasons that follow, the motion to recuse is denied, the petition is dismissed, and the pending motions for expedited consideration and release of medical records are denied.

I. BACKGROUND

Hopson is a state prisoner incarcerated at the Belmont Correctional Institution in St. Clairsville, Ohio. He is serving a sentence imposed upon him in 2014 by the Stark County Court of Common Pleas. (Doc. No. 2 ¶¶ 1-5.) Hopson originally filed the petition in the Southern District of Ohio. On March 31, 2021, the Southern District transferred the action to the Northern District of Ohio on the grounds that the petition challenges Hopson's conviction in Stark County, Ohio and, therefore, his petition should be transferred to the district court where the state court that convicted and sentenced him is located. (Doc. No. 1.) Hopson, however, does not challenge the lawfulness of his underlying Stark County convictions and sentence. Instead, he claims that his state imprisonment in Belmont Correctional Institution violates his constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment on the basis that he suffers from chronic Hepatitis C ("HCV") and has been "categorically denied [the] curative treatment" that he has requested "based solely on a blanket policy promulgated and implemented by the Ohio Department of Rehabilitations and Corrections ("ODRC")."[1] (Doc. No. 2 at 8–9.[2]) Hopson does not allege that he has pursued formal grievances within the prison system, or that he has raised his

---

[1] According to Hopson, a "state-of-the-art" curative treatment for HCV exists, but under ODRC policy, the treatment is available to prisoners only when the disease has reached a certain stage and the inmate meets certain criteria. Treatment of Hopson's HCV with Interferon is available to him. But Hopson complains that Interferon treatment has more side effects and is less effective than the "state-of-the-art" treatment, and the ODRC's "blanket policy" that he will only be eligible for the "state-of-the-art" treatment when his condition worsens is not based upon an "individualized medical determination." (Doc. No. 2 at 8–9.) Hopson alleges that respondent is deliberately indifferent to his medical needs because respondent is aware of his serious condition but "is without the authority to override the medical policy of the ODRC" and "is bound by ODRC policy to act with deliberate indifference to [his] serious medical need." (*Id.* at 11-12.) Contending that "no set of conditions of confinement would be sufficient under the given circumstances to protect [his] Eighth Amendment right to be free from cruel and unusual punishment" (*id.* at 17-18), he seeks "immediate release from custody." (*Id.* at 19.)

[2] Page number references are to the page numbers assigned to each individual document filed by the Court's electronic filing system.

2

claim in the Ohio courts. Instead, he claims that the backlog of cases faced by Ohio's judicial branch resulting from the COVID-19 pandemic has rendered state remedies ineffective and inadequate to protect his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment, and he should not be required to exhaust his state court remedies. (*Id*. at 5.)

Then on May 26, 2021, Hopson filed a civil rights action against the Court in the Southern District of Ohio (Case No. 2:21-cv-2784 ("SDOH Case").) The complaint in the SDOH Case alleges that, in violation of the Eighth Amendment, the undersigned has deprived Hopson of adequate medical care by not ordering the warden to respond to the transferred petition. (*See* SDOH Case Doc. No. 5.) In the SDOH Case, Hopson seeks $100,000.00 in damages against the undersigned. On June 8, 2021, Hopson filed a motion in the instant action for this Court to recuse (and amendment to the motion to recuse) and transfer this action back to the Southern District of Ohio. (*See* Doc. Nos. 9, 10.) The basis for Hopson's motion for recusal is that because he is seeking $100,000.00 in damages in the SDOH Case against the undersigned, the outcome of the instant action "could have a direct bearing on the award granted in the [SDOH Case]. Therefore, Judge Lioi has a personal financial interest in the outcome of the above captioned case." (Doc. No. 9 at 1.)

On June 30, 2021, Magistrate Judge Kimberly Jolson issued a report and recommendation ("R&R") in the SDOH Case recommending that the case against the undersigned be dismissed on two grounds—failure to state a claim upon which relief may be granted and judicial immunity. (*See* SDOH Case Doc. No. 4 at 4–5.) On July 23, 2021, Hopson filed an objection to the R&R. In order to allow the Southern District of Ohio time to issue a final judgment in the SDOH Case, the

3

Court entered an order indicating that it would defer a ruling on Hopson's petition and motion to recuse until such time as such judgment was issued. (*See* Order [non-document] dated August 4, 2021.) But given that Hopson has filed a motion in the SDOH Case asking that court (1) "to stay adjudication" of that action, (2) serve the complaint in the SDOH Case upon the undersigned, and (3) order the undersigned to rule on Hopson's motion for recusal in the instant action (SDOH Case Doc. No. 8), and given that the Southern District of Ohio has not to date issued a final judgment in the SDOH Case (perhaps due to Hopson's request), the Court can no longer defer acting upon Hopson's pending motions and petition.

## II.    MOTION TO RECUSE

The Court will first address Hopson's motion that the Court disqualify itself and transfer the case back to the Southern District of Ohio. In his motion to recuse, Hopson argues that because he seeks $100,000.00 in damages against the undersigned in the SDOH Case, the Court has a financial interest in the outcome of the instant action and should recuse pursuant to 28 U.S.C. § 455. (Doc. No. 9 at 1–2.)

"[A] judge is presumed to be impartial." *PNC Equip. Fin. v. Mariani*, 758 F. App'x 384, 391 (6th Cir. 2018) (citing *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007) (further citation omitted)). The burden of justifying disqualification falls upon the party seeking recusal. *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) ("The burden is on the moving party to justify disqualification.") (citing *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999)).

Under 28 U.S.C. § 455(b)(4), a judge should disqualify himself or herself in the following circumstances: "He knows that he, individually or as a fiduciary, or his spouse or minor child

residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding[.]" The statute defines "financial interest" as follows:

> "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party, except that:
>
> **(i)** Ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;
>
> **(ii)** An office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;
>
> **(iii)** The proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;
>
> **(iv)** Ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

28 U.S.C. § 455(d)(4).

Hopson's claim for damages against the Court in the SDOH case does not fall within the statute's definition of financial interest. Nor does Hopson otherwise explain how the Court's decision in this action would impact the outcome of the SDOH Case. Hopson has not carried his burden to justify the disqualification of the Court pursuant to § 455(b)(4), and his motion on that basis is denied.

In the motion, Hopson also recites the language of 28 U.S.C. § 455(a), which provides that: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." (Doc. No. 9 at 1.) It appears

that Hopson is suggesting the Court cannot be impartial in the instant action because its financial interest is implicated in the SDOH Case. For the reasons discussed above, the undersigned does not have a financial interest in the instant action as defined by the statute upon which to question the Court's impartiality. To the extent that Hopson is arguing that the Court cannot be impartial in the instant action simply because he has sued the Court in another jurisdiction, that argument is unavailing.

Section 455(a) requires recusal not only when there is actual partiality, but also when there is an "appearance" of partiality. *See Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860, 108 S. Ct. 2194, 2203, 100 L. Ed. 2d 855 (1988). But to "'say that § 455(a) requires concern for appearances is not to say that it requires concern for mirages. The standard is an objective one[.]'" *United States v. Odeh*, No. 13-cr-20772, 2014 WL 3767808, at *2 (E.D. Mich. July 31, 2014) (quoting *United States v. El-Gabrowny*, 844 F. Supp. 955, 961 (S.D.N.Y. 1994)). As the Sixth Circuit has explained, § 455(a) "'imposes an objective standard[.]'" *PNC Equip. Fin.*, 758 F. Appx at 390–91 (6th Cir. 2018) (quoting *Gagacki*, 834 F.3d at 616 (citing *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013))). Under that standard, "[t]he statute requires a judge to recuse 'if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) (quoting *Hughes v. United States,* 899 F.2d 1495, 1501 (6th Cir. 1990)). A judge need not recuse under § 455(a) "'based on the subjective view of a party, no matter how strongly that view is held.'" *In re Polyurethane Foam Antitrust Litig.*, No. 17-3361, 2017 WL 8791098, at *4 (6th Cir. Dec. 14, 2017) (citing *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (citation omitted)). For the reasons explained below and notwithstanding Hopson's subjective view to the

contrary, Hopson has failed to establish that a reasonable person, knowing all the circumstances, would call into question the Court's impartiality in the instant action simply because Hopson filed the SDOH Case.

A United States magistrate judge in another jurisdiction has concluded that the SDOH Case lacks merit and has recommended dismissal of that action on two grounds—failure to state a claim and judicial immunity.[3] (*See* SDOH Case Doc. No. 4.) "[S]uits against public officials are common and a judge would likely not harbor bias against someone simply because the person named him in a meritless civil suit." *United States v. Houston*, No. 3:13-cr-10, 2013 WL 3975405, at *13 (E.D. Tenn. July 29, 2013) (quoting *In re Taylor,* 417 F.3d 649, 652 (7th Cir. 2005)). In addition to filing the SDOH Case, Hopson also states that he has filed a complaint of judicial misconduct against the undersigned. (*See* Doc. No. 10 at 7.) But the mere filing of a complaint of judicial misconduct is not a basis for recusal. Were it otherwise, litigants would be able to require the recusal of judges at will. *See Link v. Adamski*, No. 15-cv-819, 2015 WL 4469694, at *2 (W.D. Pa. July 22, 2015) (collecting cases).

Having failed to establish that the Court has a financial interest in the outcome of the instant action, Hopson has not identified any other basis upon which a reasonable person would call into question the Court's impartiality under § 455(a) simply because he filed the SDOH Case. Section 455(a) "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000) (internal quotation marks and citation omitted). "Recusal is not required simply because one of the parties has initiated

---

[3] The federal district judge assigned to the SDOH Case has not yet ruled on Hopson's objections to recommendation of the magistrate judge.

litigation against the presiding judge." *Callihan v. E. Kentucky Prod. Credit Ass'n*, 895 F.2d 1412 (Table) (6th Cir. 1990) (citing among authority *United States v. Studley,* 783 F.2d 934, 939–40 (9th Cir. 1986)); *see also United States v. Houston*, No. 3:13-cr-09, 2014 WL 241589, at *2 (E.D. Tenn. Jan. 22, 2014) ("[A] judge's disqualification is neither required because one of the parties has initiated litigation against the presiding judge, nor does it summarily demonstrate partiality.") (citing *Callihan*); *United States v. Houston*, No. 3:13-cr-10, 2013 WL 3975405, at *12 (E.D. Tenn. July 29, 2013) ("[N]umerous courts have held that filing a lawsuit against a judge is not sufficient to establish partiality under § 455(a).") (collecting cases); *Flint v. Whalin*, No. 3:11-cv-316, 2011 WL 2471550, at *1 (W.D. Ky. June 21, 2011) ("The mere fact that [this judge] may be one of the numerous federal judges that [the plaintiff] has filed suit against is not sufficient to establish that [his] recusal from [this] case is warranted under 28 U.S.C. § 144 or § 455(a).") (alterations in original) (quoting *Azubuko v. Royal,* 443 F.3d 302, 304 (3d Cir. 2006)); *In re Martin-Trigona*, 573 F. Supp. 1237, 1243 (D. Conn. 1983) ("[I]t *is* clear that a judge is not disqualified under 28 U.S.C. § 455 . . . merely because a litigant sues or threatens to sue him.") (emphasis in original) (citing *United States v. Grismore,* 564 F.2d 929, 933 (10th Cir. 1977), *cert. denied,* 435 U.S. 954, 98 S. Ct. 1586, 55 L. Ed. 2d 806 (1978)). "To hold otherwise 'would allow litigants to judge shop by filing a suit against the presiding judge.'" *Flint,* 2011 WL 2471550, at *1 (quoting *In re Taylor,* 417 F.3d at 652); *see also Cobble v. Value City Furniture*, 3:06-cv-631, 2008 WL 1995086, at *1 (W.D. Ky. May 6, 2008) (citing 32 Am. Jur. 2d Federal Courts § 149 ("For a judge to be disqualified simply because the plaintiff has sued the judge would be to allow the plaintiff to manipulate the identity of the decision-maker and thus to engage in judge-shopping.")).

8

The decision of whether to recuse lies within the sound discretion of the Court. *Green v. Nevers*, 111 F.3d 1295, 1303 (6th Cir. 1997) (motions brought under § 455 "are entrusted to the sound discretion of the trial court") (citations omitted); *Ragozzine,* 2014 WL 1153715, at *1 (same) (citing *United States v. Wilensky,* 757 F.2d 594, 599–600 (3d Cir. 1985)). While a judge has a duty to recuse when the moving party has met his burden to establish disqualification under the statute, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837, 93 S. Ct. 7, 34 L. Ed. 2d 50 (1972). For the reasons discussed above, the undersigned concludes that Hopson has not met his burden to establish that this Court must recuse itself from the instant action pursuant to §§ 455(a) or (b)(4); rather, the Court has a "duty to sit" and resolve the instant action. Accordingly, Hopson's motion for recusal is denied and the Court will proceed to consider Hopson's § 2254 habeas petition.

### III.     § 2254 HABEAS PETITION

Under 28 U.S.C. § 2243, federal district courts conduct an initial screening review of habeas corpus petitions. *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011) (citing 28 U.S.C. § 2243; *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970)). A court must dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254; s*ee also Allen,* 424 F.2d at 141 (the district court has a duty to "screen out" habeas corpus petitions that lack of merit on their face). No response from the respondent is necessary when a petition is frivolous, obviously lacks merit, or where the necessary facts can be determined from the petition itself without consideration of a response. *Allen*, 424 F.2d at 141.

As an initial matter, it is not apparent that Hopson's claim is cognizable in habeas. The Supreme Court has made clear that constitutional challenges to the fact or duration of a prisoner's confinement are the proper subject of a habeas corpus petition, not a civil rights complaint under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93. S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Hopson does not challenge the fact or duration of his confinement with respect to his underlying Stark County convictions. Rather, he challenges the constitutionality of the medical care he is being provided during his otherwise lawful custody. Generally, such challenges are properly brought under 42 U.S.C. § 1983. *Id.* (Section 1983 action is the proper remedy for a prisoner asserting a constitutional challenge to conditions of prison life, but not to the fact or length of his custody). Hopson's Eighth Amendment claim regarding the constitutional sufficiency of his medical care is, on its face, the type of conditions-of-confinement claim the Sixth Circuit has found to be noncognizable on habeas corpus review. *See, e.g., Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (holding that "no grounds for habeas relief were established" where a prisoner alleged that his constitutional rights were violated as a result of delay and denial of medical treatment). Such alleged constitutional violations are properly brought pursuant to 42 U.S.C. § 1983. *Id.; see also Mann v. Ohio Dep't of Rehab. and Corr.*, 814 F. App'x 134) (6th Cir. 2020) (§ 1983 Eighth and Fourteenth Amendment claims challenging Ohio's policy for allocating HCV medication). To the extent that Hopson's Eighth Amendment deliberate indifference claim is noncognizable in habeas, the petition is dismissed without prejudice to Hopson raising his claims in an action brought pursuant to § 1983. *See Martin*, 319 F.3d at 714 (reversing and remanding, finding that rather than dismissing petitioner's habeas petition with prejudice, the district court should have dismissed the petition without prejudice to allow petitioner to raise his potential civil

rights claims properly as a § 1983 action).

That said, Hopson seeks release from confinement, stating that no set of conditions would be sufficient to remedy the Eighth Amendment violation he alleges. Release from custody is the "heart of habeas corpus." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) ("The Supreme Court has held that release from confinement—the remedy petitioners seek here—is 'the heart of habeas corpus.'") (quoting *Preiser,* 411 U.S. at 498). And in *Wilson,* the Sixth Circuit permitted federal inmates to bring a habeas corpus action where they sought release from incarceration for a medically vulnerable subclass of inmates due to alleged conditions in the prison resulting from the COVID-19 pandemic where they claimed no set of conditions would be sufficient to remedy the alleged constitutional violation. *Wilson,* 961 F.3d at 838 ("Our precedent supports the conclusion that where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement."). Federal district courts within the Sixth Circuit have permitted state prisoners seeking release from prison conditions resulting from COVID-19 to bring their claims under 28 U.S.C. § 2254 and § 2241. *See e.g. Horner v. Belmont Corr. Inst*., Case No. 2:20-cv-6118, 2021 WL 540057, at *1–2 (S.D. Ohio Jan. 8, 2021) (citing cases); *Harp v. Nagy*, Case No. 2:20-cv-11866, at *3 (E.D. Mich. May 18, 2021) (citing cases).

While Hopson seeks release from confinement, the factual circumstances of the instant action are distinguishable from *Wilson* with respect to Hopson's claim that there are no conditions of confinement sufficient to remedy the alleged constitutional violation. The unconstitutional condition he alleges would be remedied if he were afforded the "state-of-the-art" HCV treatment available to some Ohio prisoners under ODRC's medical policy. Indeed, other Ohio prisoners

11

challenging the ODRC's HCV treatment policies have pursued remedies other than release. *See e.g. Mann*, 814 F. App'x at 135–36 (6th Cir. 2020) (remanding § 1983 action where Ohio prisoners claiming they were denied HCV medication under the ODRC's HCV treatment policy and seeking damages and injunctive relief); *see also Atkins v. Parker*, 972 F.3d 734, 738 (6th Cir. 2020) (inmates challenging Tennessee's HCV treatment policy under § 1983 and seeking declaratory and injunctive relief).

Nevertheless, the remedy Hopson seeks is "the heart of habeas corpus." To the extent his Eighth Amendment claim is cognizable in habeas corpus, the petition is dismissed without prejudice because Hopson has not exhausted his claims in state court.[4] Before a state prisoner may seek habeas relief under § 2254 (or § 2241), he must first exhaust his available state-court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). To fulfill the exhaustion requirement, a petitioner must present his federal claims to all levels of the state appellate system, including the state's highest court, in order to provide the state courts a full and fair opportunity to resolve the federal constitutional claims. *Id*. at 845; *see also Wagner v. Smith*, 581 F.3d 410, 414–15 (6th Cir. 2009) (to be properly exhausted, each claim must be "fairly presented" to both the state courts of appeals and state supreme court so that those courts have the opportunity to address the legal and factual basis for each claim)

---

[4] The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that the habeas claims before the court have not first been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

(citations omitted).

Hopson expressly acknowledges that he has not exhausted his claim in the Ohio courts. Citing *Workman v. Tate*, 957 F.2d 1339 (6th Cir. 1992), he contends exhaustion should be excused. (Doc. No. 2 at 14.) In *Workman*, the Sixth Circuit stated that inordinate delay may be a circumstance which would excuse the exhaustion of state court remedies and held that a habeas petitioner was excused from the exhaustion requirement where his "petition for post-conviction relief has languished in the state courts for more than three years." *Workman*, 957 F.2d at 1344. But Hopson has not demonstrated that his claim has been unreasonably delayed in the state courts. In fact, he does not indicate he has even attempted to present his claim there but simply asserts there is a backlog of state-court cases. This is insufficient to excuse the exhaustion requirement in a habeas action. *See. e.g., Porter v. White*, No. 01-cv-72798, 2001 WL 902612, at *1 (E. D. Mich. Aug. 6, 2001) (dismissing habeas petition as unexhausted where petitioner argued that he should be excused from the exhaustion requirement on the basis that his appeal might take years to complete); *see also Johnson v. Bauman*, No. 2:19-cv-12423, 2020 WL 5819567, at *2 (E.D. Mich. Sept. 30, 2020) (declining to excuse exhaustion requirement for state prisoner's § 2254 petition due to inordinate delay by the state courts where petitioner failed to show that his case has languished for years without any meaningful attention in the state courts), *reconsideration denied,* No. 2:19-cv-12423, 2020 WL 6867787 (E.D. Mich. Nov. 23, 2020).

It is true that the Court may consider the merits of unexhausted habeas claims under unusual or exceptional circumstances, such as the COVID-19 global pandemic. *See Horner,* 2021 WL 931481, at *3 (quoting *Blackburn v. Noble*, 479 F. Supp. 3d 531, 539 (E.D. Ky. Aug. 17, 2020) (citation omitted)). Hepatitis C, however, is neither unusual nor exceptional. As described

13

by the U.S. Department of Health and Human Services National Institute of Health, "[i]n the United States, hepatitis C is the most common chronic viral infection found in blood[.]" *See* https://www.niddk.nih.gov/health-information/liver-disease/viral-hepatitis/hepatitis-c#common.

Accordingly, to the extent that Hopson's petition asserts cognizable habeas claims, the petition is dismissed without prejudice for failure to exhaust his state court remedies.

### IV. CONCLUSION

For the foregoing reasons, Hopson's motion for recusal and amendment thereto are denied. (Doc. Nos. 9, 10.) Further, it is apparent from the face of the petition that Hopson is not entitled to habeas corpus relief in federal district court and the petition is dismissed without prejudice. In light of the Court's dismissal of the petition, Hopson's motions for "expedited consideration" (Doc. No. 3) and "release of medical records" (Doc. No. 4) are moot and denied as such.

The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: October 20, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**